WILLIAM R. JOHNSON *vs.* J. ELLIS WHITE, City Treasurer.

PROVIDENCE—JUNE 9, 1904.

26  207
p26  586

PRESENT: Tillinghast, Douglas, and Blodgett, JJ.

(1)  *Surface Water.  Municipal Corporations.*

Where a city by the construction of a culvert collected quantities of surface
water and discharged the same over plaintiff's land, it is liable for the con-
sequent damages, although the water was only such as would have found
its way upon plaintiff's land by natural causes.
*Inman* v. *Tripp*, 11 R. I. 520, discussed.

TRESPASS ON THE CASE.  Heard on petition of defendant
for new trial, and denied.

TILLINGHAST, J.   This action is brought to recover damages
which the plaintiff claims to have sustained by reason of the
turning of surface water upon his land by the acts of the de-
fendant city.

The declaration alleges that the defendant constructed a
large culvert or drain at the junction of Nashua and Ann
Mary streets, and thereby collected quantities of surface water
and discharged the same artificially, in a channel over certain
intervening land, onto a large tract of land belonging to the
plaintiff.   It also alleges that the water so discharged was far
in excess of the amount that would have been discharged upon
the plaintiff's premises if said culvert or drain had not been
constructed as aforesaid, and that by reason of its being col-
lected as aforesaid and flowing across plaintiff's premises it
washed out a deep channel across the same and rendered a
part thereof unfit for tillage or pasturage, and decreased the
value thereof.   At the trial of the case in the Common Pleas
Division the plaintiff recovered a verdict in the sum of $500, and
the defendant now petitions for a new trial on the grounds that
no cause of action is shown, and that the verdict was against
the evidence, in this:   That no evidence was produced by the
plaintiff to show that water was collected from any area, and
turned onto plaintiff's land, from which area the surface

water did not flow thereon before the streets in question were laid out.

The defendant also claims that the damages are excessive. As the evidence submitted fails to show that any appreciable amount of surface water was collected and turned upon the plaintiff's land, by reason of the construction of the culvert or drain aforesaid, in excess of what would have flowed thereon by reason of the natural contour of the adjoining land as related to that of the plaintiff, the only question of law presented is whether the plaintiff has any cause of action.

The defendant's counsel contends that, as there has been no diversion of surface water other than that which would naturally have found its way to and upon the plaintiff's land, had not said drain been built, the city can not be held liable for any damages in the premises. He argues that, in view of this fact, the case does not fall within the rule laid down by this court in *Inman* v. *Tripp*, 11 R. I. 520, which is relied on by the plaintiff, in so far as the general principle involved is concerned, as sustaining his position.

It is true the facts in that case were quite different from those in the case at bar. There the city, by changing the grade of certain streets, caused surface water to be collected from a wide area and to flow upon the plaintiff's land and into his cellar and well. And the court held that it was liable in damages therefor.

(1)    In the case at bar the defendant has only collected such surface water as would have found its way upon the plaintiff's premises by natural causes, as aforesaid, and hence we are asked to hold that the rule referred to is not controlling.

We think, however, that the principle involved in the Inman case is applicable here: That principle, briefly stated, is this: That no one has a right to. collect surface water in any considerable quantity upon his own premises and then turn the same in a concentrated form upon the premises of his neighbor in such a manner as to cause him damage. Not that an owner of land may not so change the grade or surface thereof as to cause surface water to flow in a different direction from what it did before the natural contour thereof was

changed, for this such owner doubtless may lawfully do.   But
he may not collect and concentrate such water, by means of
drains or otherwise, and then turn it upon his neighbor's land
in a volume.   And the law doubtless is that a city has no greater
power over its streets, in the matter of disposing of surface water
which accumulates thereon, than a private individual has in
disposing of the surface water which falls or collects upon his
own land.   And, as held in the case referred to, a city " can not,
under the specious plea of public convenience, be permitted to
exercise that dominion, to the injury of another's property,
in a mode that would render a private individual responsible
in damages, without being responsible itself."

In *Wakefield* v. *Newell,* 12 R. I. 75, the doctrine announced
in the Inman case was somewhat explained and amplified,
but not modified.   It was there held that the "mere neglect
by an individual to retain on his own land water which, fall-
ing there, would naturally flow onto his neighbor's land, is
no cause of action, unless he first accumulates it by artificial
means so as considerably to increase the volume and detri-
mental effect with which it would flow on his neighbor's land."

It clearly follows, by necessary implication from the lan-
guage thus used, that if one does accumulate surface water in
the manner suggested, and then turn it upon his neighbor's
land, he thereby renders himself liable in an action of this sort.

In *Benard* v. *Bobbin Co.,* 23 R. I. 581, Stiness, C. J., in de-
livering the opinion of the court, seems to hold that the Inman
case stands for the doctrine which we have above stated.

We do not wish to be understood as holding that a town or
city is liable merely because, in the construction or grading
of a street or highway, surface water is thereby turned upon
adjoining land; for such a result is inevitable, and is merely
incidental to the making or grading of the street.   It is only
when, in connection with the doing of such work, the town or
city *collects* the water in some manner, and then discharges it
in a considerable *volume* upon the land of another that it renders
itself liable for the damages sustained thereby.

In this connection we may observe that we fail to see that
it is material whether the water thus collected would have

flowed upon the plaintiff's land in a given case or not, but for some artificial structure. For it is evident that, while a given piece of land may receive a large amount of surface water without injury thereto when it gently flows thereon from natural causes, as it is alleged was the case here before the construction complained of, yet, when collected and discharged in considerable volume at a given point, it may become very destructive and injurious.

*Almy* v. *Coggeshall*, 19 R. I. 549, cited by counsel for defendant as sustaining his contention that the Inman case only holds that a municipality is liable for damages when it collects surface water from a large area and turns it in a different direction from that in which it would have naturally flowed, does not seem to us to be well taken.

That case was brought to recover damages by reason of changing the grade of a street on which the plaintiff's lot abutted, so that the street, which before that time had been lower than the surface of the lot, was raised two feet higher than the surface thereof, whereby the water falling on the lot was prevented from flowing therefrom, and the water falling on the street was turned upon the lot, forming ponds thereon and flowing into the cellar of the plaintiff's house.

As the grade of said street was changed in accordance with the procedure pointed out in the statute, we held that the only remedy which the plaintiff had in the premises was by taking an appeal from the doings of the board of aldermen in ordering the change—that the statutory remedy in such case must be regarded as exclusive.

The reference which is made in the opinion by Matteson, C. J., to the Inman case was merely to show that the plaintiff's action was not controlled thereby. The language used clearly points out the difference between the two cases, but does not, as we read it, modify the principle enunciated thereby, as hereinbefore summarized.

*Smith* v. *Tripp*, 13 R. I. 152, cited by defendant's counsel, is clearly distinguishable from the case at bar. That case was based upon the neglect of the city to keep a certain highway in proper repair, whereby surface water was turned upon the plaintiff's premises; and the court held that the declara-

tion did not state any cause of action, because the only action which could be maintained against the city for neglecting to keep the street safe and convenient for travel is one for injury suffered in consequence of the street's being unsafe *for. travel*, and not for injury suffered by the overflow of surface water therefrom. It has no bearing, therefore, on the case at bar.

We have examined the other Rhode Island cases cited, but do not find that they sustain the defendant's position.

It is also to be observed that the plaintiff's land does not abut on either of the streets above mentioned, and hence no presumption arises like that suggested in the leading case of *Callender* v. *Marsh*, 1 Pick. 418, upon the question of the changing of the grade of the highway, which case was to the effect that such change should theoretically be regarded as having been taken into account in fixing the damages for the original taking of the land.

For a collection of cases bearing upon the rule relating to the liability of municipal corporations in cases of this sort, see note *d.* to *Gray* v. *McWilliams*, 21 L. R. A. p. 597.

Upon a careful consideration of the record submitted, we can not say that the verdict was against the evidence or that the damages awarded were clearly excessive.

Defendant's petition for a new trial denied and case remanded for judgment on the verdict.

*Page & Page & Cushing*, for plaintiff.

*Edward W. Blodgett*, for defendant.